# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 11, 2014             Decided May 13, 2014

No. 13-5093

RONNIE FOOTE,
APPELLANT

v.

ERNEST MONIZ, SECRETARY OF ENERGY,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-01351)

*Ronnie Foote*, appearing pro se, argued the cause and filed the briefs for appellant.

*Charles W. Scarborough*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Marleigh D. Dover*, Attorney, U.S. Department of Justice.

Before: KAVANAUGH and PILLARD, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: In order to protect national security, the Department of Energy's Human Reliability Program carefully evaluates employment applicants for certain positions, such as those where the employees would have access to nuclear devices, materials, or facilities. A limited number of positions fall into that category and require certification under this Program. *See* 10 C.F.R. § 712.10. To obtain certification, applicants must meet a range of requirements, including passing a psychological evaluation, passing random drug tests, annually submitting an SF-86 Questionnaire for National Security Positions, and successfully completing a counterintelligence evaluation that includes a polygraph examination. *See id.* § 712.11.

In this case, the Department refused to certify Ronnie Foote under the Human Reliability Program. Foote claims that, in denying him certification, the Department relied on the psychological evaluation of a Department psychologist, Dr. Daniel Seagrave, who allegedly recommended against certification because of Foote's race. Because Foote could not obtain the certification, he could not obtain the job he wanted at the Department.

Foote sued under Title VII. The Government says that Foote's Title VII claim is barred by *Department of the Navy v. Egan*, 484 U.S. 518 (1988). The District Court agreed.

To resolve the *Egan* issue here, we must address two questions. First, under *Egan*, is the Department of Energy's denial of Human Reliability Program certification the kind of agency judgment that is insulated from judicial review, absent a statute that specifically makes the judgment reviewable?

Second, was Dr. Seagrave in the category of Department of Energy personnel trained and authorized to make a judgment about Foote's suitability for certification?

*First*, we conclude that the Department of Energy's decision not to certify an applicant under the Human Reliability Program is the kind of judgment covered by *Egan*.

*Egan* stated that the presumption in favor of judicial review of administrative action "runs aground when it encounters concerns of national security." 484 U.S. at 527. The Court identified the President's Article II Commander in Chief authority – a "constitutional investment of power in the President" that "exists quite apart from any explicit congressional grant" – as a source of the Executive Branch's authority to control access to classified information. *Id.* And the Court recognized that "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Id.* at 530. In *Egan*, the Court therefore held that the agency's decision to deny or revoke a security clearance was not subject to review because Congress had not specifically provided otherwise.

On several occasions, we have read *Egan* to bar review, absent a statute specifically providing otherwise, of an agency employment action that is based on a similar kind of predictive national security judgment as that which underlies the denial or revocation of a security clearance.

For example, in *United States Information Agency v. Krc*, the United States Information Agency had refused to clear a Foreign Service officer for overseas postings. 905 F.2d 389 (D.C. Cir. 1990). Citing *Egan*, we concluded that the agency's decision was not reviewable. *See id.* at 394-96. We

reasoned that the "*nature*" of the agency's decision was "analogous to the Navy's decision in *Egan*" because it involved an assessment of whether the officer might compromise sensitive information. *Id.* at 395.

In *Ryan v. Reno*, the Department of Justice had decided that several job applicants were ineligible for security clearances. 168 F.3d 520 (D.C. Cir. 1999). The applicants sued under Title VII. We ruled that the Department's decision was not reviewable because it was "based on the same sort of 'predictive judgment' that *Egan* tells us 'must be made by those with the necessary expertise in protecting classified information,' without interference from the courts." *Id.* at 524 (quoting *Egan*, 484 U.S. at 529).

In *Bennett v. Chertoff*, the Transportation Security Administration had decided that a job applicant was not "suitable" for employment because she could not obtain a TSA security clearance. 425 F.3d 999 (D.C. Cir. 2005). The applicant sued under Title VII. We again stated that the agency's decision was not reviewable under *Egan*. *See id.* at 1001-04.

In our view, the *Egan* principle, as applied by the Supreme Court and in our cases, likewise applies to the Department of Energy's decision whether to certify someone under its Human Reliability Program. To begin with, the Government has a substantial national security interest in denying unreliable or unstable individuals access to nuclear devices, materials, and facilities, a point that requires no extended discussion. Indeed, the Human Reliability Program was established in part under the same Executive Order cited in *Egan* – Executive Order 10,450 – in order to "protect the national security" by identifying "individuals whose judgment

may be impaired" by any "condition or circumstance that may represent a reliability, safety, or security concern." Human Reliability Program, 69 Fed. Reg. 3213, 3213-14, 3223 (Jan. 23, 2004). Further aligning this program with *Egan*, an applicant seeking certification under the Human Reliability Program must already possess or obtain a "Q" access authorization, the Department of Energy's highest level of security clearance. *See* 10 C.F.R. § 712.11(a)(1).

In short, the decision whether to certify an applicant under the Human Reliability Program, like the decision whether to grant a regular security clearance, is "an attempt to predict" an applicant's "future behavior and to assess whether, under compulsion of circumstances or for other reasons, he might compromise sensitive information." *Egan*, 484 U.S. at 528. Therefore, the decision whether to certify an applicant under the Human Reliability Program is the kind of agency judgment that *Egan* insulates from review, absent a statute that specifically says otherwise.

*Second*, we conclude that Dr. Seagrave, the individual who performed the psychological evaluation of Foote, was in the category of officials within the Department of Energy authorized and trained to make a judgment about Foote's suitability for certification.

In *Rattigan v. Holder*, we held that *Egan* shields from review the "security-clearance-related judgments of agency personnel specifically trained and authorized to make them." 643 F.3d 975, 982 (D.C. Cir. 2011), *on rehearing*, 689 F.3d 764, 768 (D.C. Cir. 2012) (adhering to prior panel decision on this point). The psychological evaluation component of the Human Reliability Program determines whether an applicant "(1) Represents a security concern; or (2) Has a condition that

may prevent the individual from performing . . . duties in a reliable and safe manner." 10 C.F.R. § 712.14(a); *see also* 69 Fed. Reg. at 3215 (psychological evaluation aims to assess "at-risk behavior or conditions that raise a security concern"). The psychological evaluation is administered by what the regulations describe as Designated Psychologists who must meet specified education and experience requirements. *See* 10 C.F.R. § 712.33. Foote was examined by one such psychologist, Dr. Seagrave. Dr. Seagrave served as the Alternate Lead Psychologist at the National Nuclear Safety Administration within the Department of Energy. As a psychologist specifically trained and assigned to conduct psychological evaluations for this important program, Dr. Seagrave was well within the category of individuals authorized under *Rattigan* to make a judgment about Foote's suitability for certification. Therefore, under *Egan*, the Department's decision not to certify Foote under the Human Reliability Program is unreviewable, and Foote's suit may not proceed.

We affirm the judgment of the District Court.

*So ordered.*