**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>ROMAN T. GONZALES,<br><br><i>Plaintiff - Appellee,</i><br><br>v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br><br><i>Defendant - Appellant.</i></td><td>No. 25-1037<br><br>D.C. No.<br>4:20-cv-00102-BLW<br><br><br>OPINION</td></tr>
</table>

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Argued and Submitted February 4, 2026
Portland, Oregon

Filed April 16, 2026

Before: Carlos T. Bea, Morgan B. Christen, and Roopali H. Desai, Circuit Judges.

Opinion by Judge Christen

# SUMMARY[*]

## Employment Discrimination

The panel affirmed the district court's judgment after a jury trial in favor of Roman Gonzales in his action under the Americans with Disabilities Act against Batelle Energy Alliance, LLC.

Batelle contracts with the United States Department of Energy to manage the Idaho National Laboratory, where the government stores spent nuclear fuel. Batelle revoked Gonzales's fitness-for-duty certification and terminated his employment as a Security Police Officer because of his use of prescription pain medication. The jury found in favor of Gonzales on his retaliation and "regarded as" discrimination claims, and the district court denied Batelle's motion for judgment as a matter of law.

Aligning with the Sixth Circuit, the panel rejected Batelle's argument that its revocation of Gonzales's fitness-for-duty certification, a requirement for security personnel under 10 C.F.R. § 1046, was not justiciable because it was a nonreviewable security clearance decision vested with the Department of Energy. Under *Dep't of Navy v. Egan*, 484 U.S. 518 (1988), when agencies make security clearance determinations and other similarly predictive national security judgments that Congress vested in those agencies, the resulting decisions are nonjusticiable. The revocation of Gonzales's fitness-for-duty certification, however, was justiciable because the medical and physical standards set

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

forth in § 1046 are not tied to predictive security determinations.

The panel affirmed Batelle's other grounds for appeal in a simultaneously filed memorandum disposition.

## COUNSEL

DeAnne Casperson (argued), Amanda E. Ulrich, and Ryan S. Dustin, Casperson Ulrich Dustin PLLC, Idaho Falls, Idaho, for Plaintiff-Appellee.

Kelsey VanOverloop (argued), Littler Mendelson PC, Denver, Colorado; Thomas M. Metzger, Littler Mendelson PC, Columbus, Ohio; Amelia A. McDermott, Littler Mendelson PC, San Diego, California; Gregory G. Iskander, Littler Mendelson PC, Walnut Creek, California; for Defendant-Appellant.

## OPINION

CHRISTEN, Circuit Judge:

This appeal arises from Battelle Energy Alliance, LLC's decision to terminate Roman Gonzales's employment as a Security Police Officer because of his use of prescription pain medication. For three years, Gonzales worked for Battelle, a contractor for the United States Department of Energy, and took prescribed opiates to treat a chronic back injury without issue. Despite no change in Gonzales's medication or job performance, Battelle revoked Gonzales's fitness-for-duty certification and terminated him on that basis. Gonzales sued Battelle for disability discrimination pursuant to the Americans with Disabilities Act. A jury found in favor of Gonzales on his retaliation and "regarded as" discrimination claims but rejected his other causes of action. On appeal, Battelle argues that its revocation of Gonzales's certification was not justiciable because it was a nonreviewable security clearance decision. We affirm the district court's judgment.[1]

### I.

### A.

At all times relevant to this appeal, Battelle Energy Alliance, LLC contracted with the Department of Energy (DOE) to manage the Idaho National Laboratory, where, among other things, the government stores spent nuclear fuel. As part of its contractual obligations with the DOE, Battelle employed Security Police Officers (SPOs) to protect

---

[1] We affirm Battelle's other grounds for appeal in a simultaneously filed memorandum disposition.

the nuclear storage sites.  Battelle and its SPO employees were required to comply with several DOE regulations, two of which are relevant here.

First, from the time he was hired, Gonzales was required to meet "the medical, physical readiness, training and performance standards" for security personnel established by 10 C.F.R. § 1046.  To ensure SPOs are able to perform their jobs, this regulation establishes "the minimum medical standards to be used in determining whether [SPOs] . . . can effectively perform, with or without reasonable accommodation, all essential functions of normal and emergency duties . . . ." *Id.* § 1046.13(b)(4). The broad spectrum of medical standards in this regulation ranges from measurements of hearing, speech, and vision to assessments of the musculoskeletal and endocrine systems.  *Id.* § 1046.13(e).  Section 1046 also requires field testing to establish physical readiness qualifications for SPOs, such as a one-half mile run.  *Id.* § 1046.16.  Section 1046 requires that reasonable accommodations be provided pursuant to the requirements of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*. 10 C.F.R. § 1046.13(c); *see also id.* § 1046.2(c), .3, .5(a)(2)(i), .13(b)(4), .13(e)(10), .13(g)(3), .13(4), & .13(5)(i).

Starting in 2015, the DOE also required Battelle to ensure that all SPOs comply with the DOE Human Reliability Program (HRP), a security scheme set out in 10 C.F.R. § 712.  The HRP establishes a "security and safety reliability program designed to ensure that individuals who occupy positions affording access to certain materials, nuclear explosive devices, facilities, and programs meet the highest standards of reliability and physical and mental suitability." 10 C.F.R. § 712.1. The HRP regulation requires that SPOs acquire "DOE 'Q' access authorization,"

which is the DOE's highest level of security clearance. *Id.*
§ 712.11(a)(1); *see Foote v. Moniz*, 751 F.3d 656, 658–59
(D.C. Cir. 2014). The HRP also mandates annual security
reviews to "determin[e] the eligibility of individuals . . . for
access to classified matter or special nuclear material, . . . or
for access to national security information." *Id.* § 710.1(a);
*see id.* § 712.16 (requiring a personnel security specialist to
review annually the personnel security file of every HRP
candidate and every HRP-certified individual up for
certification or recertification in accordance with 10 C.F.R.
§ 710). The HRP includes a "counterintelligence
evaluation," which may involve a polygraph test, *id.*
§ 712.15(f), an annual job performance review, and annual
mental and medical evaluations to ensure individuals subject
to the HRP regulation remain reliable and do not represent
security concerns. *See id.* § 712.14; *id.* § 712.11. The HRP
regulation does not mention reasonable accommodation or
compliance with the ADA. The HRP allows government
contractors to suspend temporarily employees' HRP
certifications, but contractors are to report such decisions to
the DOE. The regulation reserves to the DOE, not the
private contractor, the decision whether to terminate
individual HRP certifications. *Id.* § 712.19.

At the time of Gonzales's termination, SPOs were
required to carry both the § 1046 fitness-for-duty
and the HRP certifications.[2] To comply with these DOE
regulations, Battelle employed a team of specially trained

---

[2] In its brief, Battelle uses the terms "§ 1046 medical certification" and
"§ 1046 certification" interchangeably. The district court referred to the
certification required by § 1046 as the "medical certification" or the
"fitness-for-duty determination." We refer to it as the § 1046 fitness-for-
duty certification.

physicians to complete the necessary medical and psychological evaluations.

## B.

Gonzales began working for Battelle as an SPO in 2005. Before he was hired, Gonzales had developed a back injury that was treated with prescription pain medicine. Battelle was aware of Gonzales's condition and the medication he took to manage it. In 2014, Gonzales's physician increased the dose of his prescription medication to alleviate an exacerbation of his back injury. Gonzales was required to "report to [his] supervisor and the Designated Physician for a determination of fitness for duty" when his prescription medication dosage changed. 10 C.F.R. § 1046.19(b). He complied with this reporting requirement and Battelle permitted him to continue to work as an SPO, as long as he refrained from taking the medication within eight hours of work.

After SPOs were enrolled in the HRP in 2015, the Director of Battelle's Occupational Medical Program, Dr. Stewart Curtis, approved Gonzales's HRP certification. Gonzales remained HRP-certified through 2017, and no concerns were raised about his performance. Dr. Curtis knew Gonzales was prescribed opiates.

In late 2017, Battelle hired a new doctor for the Occupational Medical Program, and the U.S. Department of Health and Human Services (HHS) revised the random, mandatory drug testing for SPOs to include testing for opiates. Two of Gonzales's random drug tests came back positive for opiates, one in December 2017 and one in February 2018. Despite these positive results, the new program doctor marked the results as "negative" in accordance with HHS guidance because Gonzales

"present[ed] a legitimate medical explanation" for the results. Battelle renewed Gonzales's § 1046 fitness-for-duty certification in May 2018.

Battelle's new program doctor began raising concerns regarding Gonzales's use of prescription opiates even though Gonzales's medication plan had not changed since 2014 and the doctor had marked Gonzales's 2018 blood test results as "negative." In June 2018, the program doctor shared with Battelle's HRP team his concern that Gonzales's "long-term use of narcotics while in HRP or under 1046 was not allowed." That same month, Battelle required Gonzales to interview with a licensed clinical social worker for the psychological component of his HRP certification. The social worker concluded that he was not reliable.

As a result of the social worker's and the program doctor's recommendations, the HRP team temporarily suspended Gonzales's HRP authorization and he was reassigned to the badging office at a reduced rate of pay. Battelle reported its temporary suspension of Gonzales's HRP certification to the DOE as required by 10 C.F.R. § 712.19 and represented to DOE that Gonzales would "be evaluated for substance abuse under oversight of the designated psychologist." But Battelle never referred Gonzales for the follow-on evaluation or submitted the temporary suspension of Gonzales's HRP to DOE for a final determination.

In November 2018, Battelle revoked Gonzales's § 1046 fitness-for-duty certification. The evidence at trial showed that, around the same time, Gonzales learned from another employee that management told at least some of Gonzales's coworkers he was losing his job for being an "opioid abuser." Gonzales sent an email complaint to HR and

management about this perceived mistreatment.  Shortly thereafter, Battelle gave Gonzales a notice of intent to terminate.  The notice cited his revoked § 1046 fitness-for-duty certification and warned Gonzales that if he did not find another position at Battelle within thirty days, he would be formally terminated as a Battelle employee.  Gonzales was unable to find another position and was terminated in January 2019.

### C.

Gonzales sued Battelle in the United States District Court for the District of Idaho in February 2020.  He alleged race and disability discrimination, retaliation, and unlawful disclosure of confidential medical information under the ADA.  A five-day jury trial commenced on August 12, 2024.

At the close of evidence, Battelle moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a) on the basis that Gonzales's ADA claims were predicated on two unreviewable security determinations: Battelle's suspension of Gonzales's HRP certification and the revocation of his § 1046 fitness-for-duty certification. The district court denied the motion, observing that Battelle had temporarily suspended Gonzales's HRP certification and that DOE had not revoked it.  As for Battelle's revocation of Gonzales's § 1046 fitness-for-duty certification, the court reasoned it was subject to judicial review because it did not represent the type of security clearance the Supreme Court described in *Department of Navy v. Egan*, 484 U.S. 518 (1988).

The case was submitted to the jury, and it returned a mixed verdict.  The jury found in favor of Gonzales on his retaliation and "regarded as" discrimination claims but rejected his claims of race discrimination, unlawful

disclosure of medical information, and denial of reasonable accommodation.  Battelle moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) or, in the alternative, a new trial, again arguing that Gonzales's ADA claims arose from non-justiciable security determinations vested with the DOE.  The district court denied Battelle's motion and entered final judgment. Battelle timely appealed.

## II.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  We review de novo questions of law, such as the existence of subject matter jurisdiction.  *See Tesla Motors, Inc. v. Balan*, 134 F.4th 558, 560 (9th Cir. 2025).

## III.

Battelle argues that the district court erred by submitting Gonzales's ADA claims to the jury because Battelle's decision to suspend Gonzales's § 1046 fitness-for-duty certification was not justiciable pursuant to the Supreme Court's holding in *Egan*.  *Egan* provides support for the conclusion that an agency's decision to revoke an HRP certification would not be subject to judicial review, but that is not the question presented by this appeal.  Gonzales was terminated as a result of Battelle's revocation of his § 1046 fitness-for-duty certification.   And as we explain, that regulation sets out a meaningfully different scheme that serves a different function from the HRP.  We conclude that the more limited decisions concerning SPOs' physical and mental fitness-for-duty under § 1046 are subject to judicial review.

### A.

In *Egan*, the Supreme Court considered a claim arising from the Navy's denial of a civilian employee's request for a security clearance based on his criminal record. 484 U.S. at 521. The employee sought review by the Merit Systems Protection Board, but the Court held that the Board lacked jurisdiction to resolve the dispute because the Navy's "grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." 484 U.S. at 522, 527, 530. *Egan* explained that the Executive's decision to grant or deny a security clearance requires the type of "[p]redictive judgment" that "must be made by those with the necessary expertise in protecting classified information," not "an outside nonexpert body" like the Merit Systems Protection Board. *Id.* at 529; *see Dorfmont v. Brown*, 913 F.2d 1399, 1401 (9th Cir. 1990) (extending *Egan*'s logic to "preclude[] judicial review" of the Department of Defense's decision to revoke an individual's security clearance). *Egan* stands for the proposition that when agencies make security clearance determinations and other similarly predictive national security judgments that Congress vested in those agencies, the resulting decisions are nonjusticiable.

### B.

The D.C. Circuit had occasion to consider *Egan*'s application to the DOE's HRP regulation in *Foote*, 751 F.3d at 657–58. There, the D.C. Circuit confronted an agency-level decision to deny an HRP certification to a job applicant. *Id*. *Foote* concluded "that the [DOE's] decision not to certify an applicant under the [HRP] is the kind of judgment covered by *Egan*." *Id.*; *see also Sanchez v. United*

*States Dep't of Energy*, 870 F.3d 1185, 1193–94 (10th Cir. 2017) (explaining that an agency's revocation of an HRP certification is a security clearance decision subject to *Egan*'s reviewability bar).   Though this appeal does not require that we consider an agency-level HRP revocation, we agree with *Foote*'s understanding of the rationale that animated the outcome in *Egan*.  Application of that rationale to the starkly different interests protected by DOE's HRP regulatory scheme and § 1046 persuades us to affirm the district court's rulings.

First, *Foote* observed that the DOE's HRP regulation "was established in part under the same Executive Order cited in *Egan*—Executive Order 10,450—in order to 'protect the national security' by identifying 'individuals whose judgment may be impaired' by any 'condition or circumstance that may represent a reliability, safety, or security concern.'"   751 F.3d at 658 (quoting Human Reliability Program, 69 Fed.Reg. 3213, 3213–14, 3223 (Jan. 23, 2004)).  The same is not true of the regulation at § 1046. Second, the HRP requires "[a] DOE 'Q' access authorization," 10 C.F.R. § 712.11(a)(1), which *Foote* explains is DOE's highest-level security clearance, *Foote*, 751 F.3d at 658–59.  The HRP specifies that "[a]ny doubt as to an HRP candidate's or HRP certified individual's eligibility for certification shall be resolved against the candidate or individual in favor of national security."  10 C.F.R. § 712.11(f).  By making the HRP applicable to SPOs in 2015, DOE mandated that SPOs obtain the same top-level security clearance described in *Foote*, initiated annual security reviews for all SPOs, *id.* § 712.16, and provided for "counterintelligence evaluation[s]," which can involve polygraph tests, *id.* § 712.15(f).   The district court recognized that although SPOs are now subject to DOE's

highest-level security clearance standards, it is the HRP that mandates this, not § 1046.

The HRP regulation expressly retains to the DOE the authority to make final HRP termination decisions, unlike § 1046. The HRP regulatory scheme allows government contractors to revoke temporarily employees' HRP certifications, *id.* § 712.19(a), but this is "an interim, precautionary action and does not constitute a determination that the individual is not fit to perform his or her required duties." *Id.* § 712.19(b). The district court explained that the temporary suspension of an HRP certificate cannot result in "loss of pay, benefits, or other changes in employment status." *Id.* Rather, if a government contractor further evaluates the circumstances and determines that its employee does not meet the HRP's requirements, another provision of the regulatory framework mandates that the contractor prepare a report for the DOE Manager. *Id.* § 712.19(f). It is the DOE Manager, not the government contractor, who determines whether the employee's HRP certification will be revoked. *Id.* § 712.19(g).

## C.

Battelle relied on its revocation of Gonzales's § 1046 fitness-for-duty certification to terminate Gonzales's employment, and the district court deemed this revocation reviewable because "the fitness-for-duty standards [set forth in § 1046] are not tied to predictive security determinations and therefore do not raise *Egan* [justiciability] concerns." Battelle argues this was error "[b]ecause the protection of nuclear facilities . . . directly implicate[s] national security," and "it follows that fitness-for-duty determinations under § 1046 are matters of national security as well." We agree with the district court.

The stated purpose of § 1046 is to "establish[] the medical, physical readiness, training and performance standards" for security personnel at DOE facilities. *Id.* § 1046.1. The regulation's detailed standards address physical and neurological conditions affecting the head, face, neck, and scalp; sense of smell; speech; hearing; vision; cardiorespiratory system; neurological, mental, and emotional health; musculoskeletal system; skin; and endocrine, nutritional, and metabolic functions. *Id.* § 1046.13(e).

Section 1046 goes on to prescribe field testing to verify physical readiness qualifications, *id.* § 1046.16, including a run of one-half mile with a maximum qualifying time of 4 minutes 40 seconds, a 40-yard dash from the prone position in 8.5 seconds or less, "and any other site-specific measure of physical readiness necessary to perform essential functions as prescribed by site management and approved by the respective program office." *Id.* § 1046.16(d)(2). The advanced readiness standard includes a one-mile run with a qualifying time of 8 minutes 30 seconds, and, from a prone position, a 40-yard dash in 8.0 seconds or less. *Id.* § 1046.16(d)(3). To satisfy § 1046, SPOs must demonstrate "sufficient agility and range of motion" to use firearms effectively in "static environments," including "prone, standing, kneeling, and barricade positions." *Id.* § 1046.16(d)(1)(i). This regulation does not require annual security assessments or the possibility of polygraph examinations akin to those required by the HRP. *See* 10 C.F.R. § 712.15, .16.

The § 1046 certification is qualitatively distinct from HRP security clearances; and security clearances, not physical and psychological fitness-for-duty tests, were at issue in *Egan.* The certification in *Egan* involved

completion of security reports and a "security investigation" to "assess whether, under compulsion of circumstances or for other reasons, [the agency employee] might compromise sensitive information." *Egan*, 484 U.S. at 520–21, 528. The Navy denied Egan's security clearance based on his criminal record, *id.* at 521–22, not because he failed a medical, physical agility, or fitness-for-duty test of the sort described in § 1046. After examining the nature of the testing and performance standards set out in § 1046, we agree with the district court that *Egan* insulated from judicial review decisions concerned with the risk that individuals granted access to sensitive information may disseminate that information, *id.* at 528–29, not review of certificates concerned with whether employees are physically or psychologically capable of performing their jobs.

Our recognition that these clearances serve different purposes aligns with our sister circuit's decision in *Hale v. Johnson*, 845 F.3d 224 (6th Cir. 2016). There, the plaintiff was a security officer tasked with guarding a nuclear plant who lost his job after failing a test to renew his medical clearance. *Id.* at 226. The Sixth Circuit rejected the defendant's argument that *Egan* rendered its decision to revoke the plaintiff's medical clearance unreviewable. *Id.* at 229–31. *Hale* explained that *Egan* "analyze[d] the importance of executive control over access to national-security *information*, not general national-security concerns such as those applicable in determining whether an individual has the physical capacity to guard a nuclear plant." *Id.* at 230 (emphasis in original) (citing *Egan*, 484 U.S. at 526–30); *see also Rattigan v. Holder*, 689 F.3d 764, 768, 770 (D.C. Cir. 2012) (explaining that *Egan*'s jurisdictional bar "covers only security clearance-related decisions made by trained Security Division personnel" and

claims that require review of "whether the plaintiff's continued access to classified information was clearly consistent with national security").

Our conclusion that *Egan* did not bar review of Gonzales's claim is also supported by the fact that § 1046 expressly requires compliance with the ADA, and the ADA is a statutory scheme that is subject to judicial review. 10 C.F.R. § 1046.13(c), .2(c), .3, .5(a)(2)(i), .13(b)(4), .13(e)(10), .13(g)(3), .13(4), & .13(5)(i); *see* 42 U.S.C. § 12117(a) (incorporating Title VII enforcement procedures for ADA employment discrimination claims, including a private cause of action). The HRP regulation makes no mention of accommodating ADA standards.

Finally, Battelle contends that § 1046 is so intertwined with the HRP that if we were to apply *Egan* to bar review of HRP decisions, we necessarily must bar review of § 1046 certification decisions as well. Not so. First, we disagree with the premise of Battelle's argument that *Egan* bars review of its decision to revoke temporarily Gonzales's HRP certification. As explained, in *Egan* and *Foote*, the government agencies denied the security clearances. *Egan*, 484 U.S. at 521; *Foote*, 751 F.3d at 657. Here, the DOE reserved the decision to revoke an HRP certification for itself, 10 C.F.R. § 712.19, and Battelle did not follow the procedure set forth in the HRP to allow the DOE to make that decision in Gonzales's case. Battelle cites *Beattie v. Boeing Co.*, 43 F.3d 559 (10th Cir. 1994) to argue that *Egan* should still bar review of contractor-level HRP decisions. *Beattie* concluded that *Egan* rendered an Air Force contractor's denial of a security clearance unreviewable. *Id.* at 566. But unlike the DOE, the Air Force expressly delegated this authority to the government contractor at issue in that case. *Id.* *Beattie* is readily distinguishable on this

basis.  *See Zeinali v. Raytheon Co.*, 636 F.3d 544, 551 (9th Cir. 2011) (explaining that "private employers can rarely avail themselves of *Egan*'s jurisdictional bar").

Second, to the extent Battelle attempts to buttress its final argument by pointing out that there is overlap between the HRP and § 1046, we are unpersuaded that this changes the analysis.  Psychological evaluations completed under the more stringent HRP regulation may be used in § 1046 assessments.  But the fact that the two certifications share similar components does not mean they serve the same functions.  *Compare* 10 C.F.R. § 712 (ensuring individuals employed in positions with "the potential to significantly impact national security," § 712.10, "meet the highest standards of reliability," § 712.1), *with* § 1046 (seeking to ensure security personnel comply with certain "medical, physical readiness, training and performance standards," § 1046.1, that are "necessary to perform essential functions," § 1046.16(d)(2), (d)(3)).  Indeed, when the DOE required all SPOs to obtain both certifications in 2015, it did not subsume or eliminate the § 1046 fitness-for-duty certification.  Instead, HRP certification and compliance with § 1046 remain distinct prerequisites.

For these reasons, Battelle's decision to revoke Gonzales's § 1046 fitness-for-duty certification is reviewable.  We therefore **AFFIRM** the district court's denial of Battelle's motion for judgment as a matter of law.