**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 3 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

GREGORY DUANE,

      Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT
OF DEFENSE; DEFENSE
INVESTIGATIVE SERVICE;
DIRECTORATE FOR INDUSTRIAL
SECURITY CLEARANCE REVIEW,

      Defendants-Appellees.

No. 00-1309

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 94-D-2585)**

---

Barry D. Roseman of Roseman & Kazmierski, LLC, Denver, Colorado for
Plaintiff-Appellant.

Martha A. Paluch, Assistant United States Attorney (Thomas L. Strickland,
United States Attorney, with her on the brief), Denver, Colorado for Defendants-
Appellees.

---

Before **KELLY** and **HOLLOWAY**, Circuit Judges, and **SHADUR**, District
Judge.[*]

---

      [*] The Honorable Milton I. Shadur, Senior United States District Judge for
the Northern District of Illinois, sitting by designation.

**SHADUR**, District Judge.

Gregory Duane ("Duane") has sued the United States Department of Defense ("Department") for the allegedly wrongful revocation of his security clearance. Duane contends that Department violated its own regulations by revoking his clearance on the basis of charges not contained in the Statement of Reasons (sometimes referred to here simply as "Statement") that it had provided to him before his administrative hearing, so that he was denied a full and fair opportunity to defend himself against those new charges at the hearing.[1]

Department filed a motion to dismiss Duane's Complaint on the grounds (1) that the court lacked jurisdiction to review the complaint and (2) that even when the Complaint is viewed on its merits, Department did not violate its own regulations when it revoked Duane's security clearance. That motion was referred to a magistrate judge, who issued a report recommending that the complaint be dismissed, a recommendation that was then adopted by the district court. We AFFIRM.

---

[1] Duane's Complaint had also asserted three other claims for violations of his constitutional rights and his rights under 32 U.S.C. § 154, Appendix F. Those claims were dismissed by the district court, and that ruling has not been appealed.

<u>Facts</u>

From 1983 to 1988 Duane worked in a series of private sector jobs that required him to possess a security clearance granted by Department. To obtain that clearance in 1984, Duane submitted answers to a Personnel Security Questionnaire ("Questionnaire") that included this question:

> Have you ever used any narcotic, depressant, stimulant, hallucinogen (to include LSD or PCP) or Cannabis (to include marijuana or hashish) except as prescribed by a licensed physician?

Duane responded "No."

On April 28, 1988 Duane's clearance was suspended by Department pending an investigation.[2] Following that investigation, Department issued a Statement of Reasons as required by the agency's internal regulations. Its Statement said Department could not find, as required by its regulations, that it was "clearly consistent with the national interest" to continue to grant Duane a security clearance. That non-finding was in turn based on three general findings: (1) that Duane advocated the use of force or violence to overthrow the United States Government, (2) that he had knowingly and willingly falsified, concealed or misrepresented material facts in statements to Department and (3) that his actions reflected poor judgment, unreliability or untrustworthiness.

---

[2] That suspension was initially issued due to concerns that Department had about Duane's political views, concerns that were later rejected by the administrative judge.

As to the second of those reasons, the Statement included these specific

charges, as amended without objection:

a.  You falsified material facts on a Personnel Security Questionnaire
(DD Form 48), executed by you under date of January 25, 1984, on
which you were required to reply to the following question: "15.a.
Have you ever used any narcotic, depressant, stimulant, hallucinogen
(to include LSD or PCP) or Cannabis (to include marijuana or
hashish) except as prescribed by a licensed physician?"; to which you
answered "NO"; whereas in truth and in fact, as you then and there
well knew and sought to conceal, you used marijuana until at least
1981.

b.  During a September 17, 1988 interview with a Special Agent of the
Defense Investigative Service, you falsified material facts in that you
stated that you had not used marijuana or any other illegal drug since
1974; whereas in truth and in fact, as you then and there well knew
and sought to conceal, you used marijuana until at least 1981.

Duane responded by denying those charges, although he admitted that he had used

marijuana sporadically as a college undergraduate during the years 1970-74 and

that he had failed to disclose that information on his Questionnaire.  As he

explained:

> I was not trying to conceal anything that I thought mattered.  I simply
> thought that I had tried marijuana so long before that it did not seem
> significant or relevant.  When I was asked about drug use in an
> interview in 1988, I readily admitted to my past use of marijuana.

In September 1991 a hearing was held before an administrative judge

("AJ").  Special Agent David Kerno ("Kerno"), who had handled the investigation

of Duane's security clearance, testified for Department that he had interviewed

Duane on September 19, 1988.  At the interview Duane initially denied having

any "drug involvement" in college, but upon further questioning he admitted that he had smoked marijuana about 12 times during 1970-71, his first two years as a college undergraduate. Duane originally justified his omission of that information from the Questionnaire by saying that he did not think the government would be interested in such minimal use, but he later admitted that he omitted the information intentionally out of fear that it would prevent him from obtaining a security clearance. On cross-examination Kerno admitted that he had not included Duane's initial denial of all drug use in the written report he prepared following the interview, explaining that he gave Duane "the benefit of the doubt" because he had admitted the usage later in the same conversation.

Special Agent Albert Snyder ("Snyder") testified for Department that he had conducted a pre-polygraph-test interview with Duane in October 1988.[3] According to Snyder, Duane said during the interview that he had used marijuana approximately 200 times between the years 1970 and 1981. On cross-examination Snyder admitted that Duane might have given 200 as an upper limit on the number of times he had used marijuana, but he also reiterated that Duane had told him he had last used marijuana in 1981.

Duane presented testimony of his friend Rosanna Jenne ("Jenne"), who had

_____

[3] No polygraph test was ever administered to Duane.

been present during Duane's interview with Snyder. Jenne testified that in the course of the interview Duane calculated the number 200 by estimating that "in the worst possible case" he had smoked marijuana once a week over a two-year period, meaning a total of 100 times. Duane then doubled that number to an "upper limit" of 200 to be absolutely certain he would pass the polygraph test. Duane also presented testimony from a colleague he had known since 1975, who stated that he had never seen any sign of Duane using illegal drugs during that time.

Duane also testified on his own behalf, refuting several of the assertions made by Department's witnesses. He said he had never denied marijuana use to Kerno. Duane explained that it was difficult for him to recall a meaningful number when asked how often he had used marijuana because of the length of time that had elapsed and the nature of his use, which occurred strictly in social settings at his fraternity. He testified that shortly after his interview with Kerno, he had provided a written statement that recalled one additional instance of marijuana use in 1974. Duane also explained that his failure to disclose his drug use on the Questionnaire arose from a "presumptive reading" of the question, in which he assumed that Department would not be interested in his reporting that he had tried marijuana so long ago and, on that premise, he wished to avoid any potential complications in the security clearance procedure.

Finally, Duane testified at length about the pre-polygraph interview with Snyder, explaining that he reached the number of 200 as an "upper bound" at which he would have no concerns about passing the polygraph exam. Duane said he had told Snyder that he felt there was no discrepancy between the number 200 and the 12 times he had initially told Kerno because "12 was a lot closer to the truth." He also stated that he told Snyder he could not recall ever using marijuana after 1974 but had given 1981 as a date he was absolutely certain would allow him to pass the polygraph exam.

Following the hearing the AJ made several key factual findings:

1. Duane used marijuana between 100 and 200 times during 1970-74, but never since that time.

2. Duane deliberately failed to disclose his marijuana use on the Questionnaire out of fear that the information would affect his ability to obtain a security clearance.

3. Duane intentionally misrepresented his marijuana use during his interview with Kerno by first denying any drug involvement and by later admitting to such usage only 12 times during 1970-71.[4]

In light of those findings, the AJ ruled in Duane's favor as to the first charge

---

[4] Although not relevant to this appeal, the AJ also found that Duane had never advocated the use of force or violence to overthrow the United States Government.

(advocating the use of force or violence) and charge 2.b (falsely denying in the 1988 interview that he had used marijuana until 1981). But as to charge 2.a (misrepresenting the marijuana use on the Questionnaire), the AJ sustained the allegation and found that Duane's denial of any drug use in his Questionnaire constituted a knowing and willful misrepresentation of material fact (charge 3). In the AJ's view there were aggravating factors that compounded the misrepresentation: Duane's initial denial of drug use in his 1988 interview with Kerno, plus the discrepancies in the numbers he gave throughout the investigation as estimates of the frequency of his drug use--and those factors overrode the mitigating factors of Duane's unblemished work history and character references. That determination led the AJ (1) to conclude that continuing Duane's access to classified information was not clearly consistent with the national interest and (2) to uphold the revocation of Duane's clearance.

Both parties appealed that determination to the Directorate of Industrial Security Clearance Review Appeal Board, which upheld all of the AJ's findings. Having thus exhausted his administrative appeals, Duane filed suit in the District Court for the District of Colorado on the grounds stated at the outset of this opinion.[5] Department moved to dismiss the action, and the district court agreed. On this appeal we review that ruling de novo (Garley v. Sandia Corp., 236 F.3d

---

[5] For its part, Department elected not to pursue any claims judicially.

1200, 1206 (10th Cir. 2001)).

Jurisdiction

At the threshold Department has urged that any judicial review of Duane's claim is barred by Department of Navy v. Egan, 484 U.S. 518 (1988). Egan held that the Navy's substantive decision to revoke or deny a security clearance--along with the factual findings made by the AJ in reaching that decision--was not subject to review on its merits by the Merit Systems Protection Board (id.). That is so because "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs" (id.). While Egan explicitly applied only to review by an external administrative board, we have joined other circuits in extending the Egan holding to any external review (including judicial review) of security clearance decisions (see, e.g., Beattie v. Boeing Co., 43 F.3d 559, 565 (10th Cir. 1994)). Accord, such cases as Stehney v. Perry, 101 F.3d 925, 932 (3d Cir. 1996); Becerra v. Dalton, 94 F.3d 145, 148-49 (4th Cir. 1996); and Dorfmont v. Brown, 913 F.2d 1399, 1401 (9th Cir. 1990)).

We would therefore have no jurisdiction to review Department's security clearance decision on its merits. We are not, however, precluded from reviewing a claim that an agency violated its own procedural regulations when revoking or denying a security clearance, and we may relatedly compel an agency to follow its

-9-

own regulations (Hill v. Department of Air Force, 844 F.2d 1407, 1412 (10th Cir. 1988)).

Department argues that Duane has attempted to evade the restriction of Egan by re-framing what is essentially a challenge to the merits of the AJ's decision as a challenge to the procedure followed by the agency. To that end Department argues that Duane's "claim is properly understood as a challenge to the administrative judge's consideration of Duane's lies concerning the frequency of his drug use to corroborate the [Questionnaire] charge and to rebut Duane's mitigating evidence." That characterization is simply not supported by the record. Duane has not asked us to review the merits of the administrative decision. Instead he has limited the issues to (1) whether Department properly followed its own regulations by permitting the revocation of his security clearance on the grounds used by the AJ and (2) whether Duane was prejudiced by any failure to follow those regulations. We have jurisdiction to review those issues.

Revocation of Clearance

As to Duane's contention that the AJ's decision upholding the revocation of his security clearance violated Department regulations, it is of course conventional wisdom that agencies must abide by their own regulations (Fort Stewart Sch. v. Federal Labor Relations Auth., 495 U.S. 641, 654 (1990)). If however it is clear that a party understood the issue that formed the basis of the

administrative decision and received a full opportunity to litigate that issue, there is no basis for finding a violation of the agency's regulations even if the administrative complaint had been somehow deficient (Facet Enters., Inc. v. NLRB, 907 F.2d 963, 972 (10th Cir. 1990)).  It is likewise plain that there is no "right" to a security clearance, so that full-scale due process standards do not apply to cases such as Duane's (Egan, 484 U.S. at 528; Hill, 844 F.2d at 1411).

Here Department has established this personnel security standard (32 C.F.R. §154.6(b)):

> [W]hether, based on all available information, the person's loyalty, reliability, and trustworthiness are such that entrusting the person with classified information or assigning the person to sensitive duties is clearly consistent with the interests of national security.

Department regulations require that applicants be provided with a Statement of Reasons "that shall be as detailed and comprehensive as the national security permits" before making any final unfavorable clearance decision (32 C.F.R. Pt. 155 App. A Item 3).  Those final decisions consider a number of aggravating and mitigating factors, including "the nature and seriousness of the facts, circumstances, or conduct," "the frequency of the conduct" and "the extent to which the conduct was negligent, willful, voluntary, or undertaken with knowledge of the circumstances or consequences involved" (Department's

-11-

Directive ("Directive") 5220.6 §F.4).[6]

Duane highlights several differences between the charges in the Statement and the AJ's findings. First he points out that the Statement charged him with failing to disclose on the Questionnaire that he had used marijuana until 1981, while the AJ found he had last used marijuana in 1974. That difference is immaterial--the essence of that charge was that Duane failed to disclose his past marijuana use on the Questionnaire. Simply because the judge found that Duane used marijuana between 1970 and 1974 instead of continuing until 1981 has no effect on the ultimate question whether Duane gave a misleading answer on the Questionnaire.

Second, the Statement charged Duane with having misrepresented in the

---

[6] Under Department regulations, Duane received a copy of the Directive along with the Statement. In part his briefs argue that the Directive applies only to "administrative clearance decisions made before the issuance of a [Statement]" and that to allow consideration of mitigating and aggravating factors in hearings such as his would render meaningless the additional requirement that Statements "be as detailed and comprehensive as the national security permits." That argument fails for two reasons. First, Directive §D expressly says a negative clearance decision cannot be made until after there has been notice in the form of a Statement and, if the individual requests, a hearing. Duane's argument that the Directive applies only to pre-Statement decisions therefore makes no sense. Second, there is no inherent contradiction between the issuance of a detailed and comprehensive Statement and the consideration of the factors described in the Directive as they relate to the charges contained in the Statement. That is precisely what was done here. There was nothing violative of Department regulations in the AJ's consideration of mitigating and aggravating factors in reaching a decision in this case.

Kerno interview that he had not used drugs after 1974. That charge was rejected by the AJ, who nevertheless found that Duane had misrepresented the <u>frequency</u> of his drug use when he told Kerno he had used marijuana just 12 times. Duane asserts that the Statement was deficient because it failed to charge him specifically with having misrepresented the frequency of his marijuana usage. Though the district court found there was merit to that argument, it also found that Duane was not prejudiced by any deficiency in the Statement. We agree.

In assessing whether a party can be held liable for an allegation not charged in an administrative complaint, we have said that "the central inquiry is fairness: considering the circumstances of the case, did [the party] know what conduct was being alleged and have a fair opportunity to present [its] defense?" (<u>Facet Enters.</u>, 907 F.2d at 972). In other words, "[a]s long as a party to an administrative proceeding is reasonably apprised of the issues in controversy, and is not misled, the notice is sufficient" (<u>Savina Home Indus., Inc. v. Secretary of Labor</u>, 594 F.2d 1358, 1365 (10th Cir. 1979)).

We have consistently followed that rule in reviewing the administrative decisions of other agencies. For example, in <u>NLRB v. I.W.G., Inc.</u>, 144 F.3d 685, 687-88 (10th Cir. 1998) we held that the defendant did not have a fair opportunity to present a defense to a charge when the formal charges made no mention of that allegation and the defendant had no notice before or during the hearing that the

charge was at issue. In <u>Wyoming v. Alexander</u>, 971 F.2d 531, 542-43 (10th Cir. 1992) we similarly held that Wyoming did not have a fair opportunity to present a defense when the administrative board issued its decision based on an issue that it had raised sua sponte without prior notice.

Conversely, in <u>Facet Enterprises</u>, 907 F.2d at 974 we held that the defendant had constructive notice of an alternate theory of liability not described in the formal charge when the agency detailed that theory during its opening argument and at other points during the hearing and when the defendant's conduct revealed that it understood and attempted to defend against that theory. Similarly, we held in <u>NLRB v. Tricor Prods., Inc.</u>, 636 F.2d 266, 271 (10th Cir. 1980) that the issue of the constructive discharge of an employee was fairly tried when the only witnesses to the incident testified about it at the hearing even though that issue had not been specifically charged.

This case falls into the latter category. Duane was undisputably on notice of the single allegation that the AJ sustained against him: the failure to disclose his use of marijuana on the Questionnaire.[7] That the AJ found the evidence supported a conclusion that Duane had used marijuana during 1970-74 instead of

_____

[7] Duane would have it that the AJ's finding regarding the frequency of his use of marijuana effectively credited an uncharged allegation. That mis-characterizes the AJ's opinion, which considered Duane's conflicting statements regarding his frequency of use only as aggravating the omission on his Questionnaire.

until 1981 affects only the scope of Duane's misrepresentation, not the misrepresentation itself. That minor variance between the allegation and the AJ's finding does not constitute a violation of Department regulations.

Moreover, there is simply no evidence that Duane was prejudiced in any way. Duane has said that if he had known that the frequency of his total use of marijuana, as well as the fact of his usage during the period 1970-74 (instead of all the way to 1981), would form the basis of the AJ's decision, he would have adopted a number of different hearing strategies. In particular, Duane says he would have (1) presented other witnesses who would have testified that his use of marijuana during college was infrequent,[8] (2) presented testimony from a mathematician who could have explained how the "upper bound" estimate of 200 times that Duane gave to Snyder could be consistent with the initial estimate of 12 times that he gave to Kerno, (3) testified himself in greater detail about his interview with Kerno and (4) cross-examined Kerno much more thoroughly. None of those tactics would have affected the outcome.

Duane did testify in detail about his interviews with Kerno and Snyder. He explained how he calculated the frequency of his marijuana use and how he believed that the different numbers he gave as estimates were not inherently contradictory. He also explained why he omitted any reference to marijuana use

---

[8] Duane presented affidavits from two such witnesses to the district court.

in his Questionnaire answers. Duane's attorney confronted Kerno and Snyder on cross-examination as to the differences in their versions of Duane's interviews with them. He also called other witnesses who corroborated both Duane's version of the interview with Snyder and his claim not to have used marijuana since his undergraduate days.

After hearing all of that evidence, the AJ made findings of fact and sustained charge 2.a against Duane. Duane admits that he failed to disclose marijuana use on the Questionnaire and that he gave varying estimates of the frequency of his use at different times, ranging from zero to an "upper bound" of 200. Those admissions formed the basis of the AJ's decision. Additional witnesses from Duane's college years would not have changed those facts, nor would testimony from a mathematician or additional cross-examination of Department's witnesses. Duane received a full and fair opportunity to litigate the issue that formed the basis for Department's revocation of his security clearance.

## Conclusion

We hold that Department did not violate its own regulations when it revoked Duane's security clearance, so that he had a full and fair opportunity to defend himself during his administrative hearing. We therefore AFFIRM the district court's dismissal of Duane's Complaint and this action.